```
               UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
                   JACKSONVILLE DIVISION
SEBRINA I. JAMES,

                      Plaintiff,

v.                                    Case No.  3:07-cv-775-J-33TEM

THE COMMUNITY PHONE BOOK, INC., a
Corporate Subsidiary or Division of
VOLT INFORMATION SCIENCES, INC.,

                      Defendant.
_____/
```

**ORDER**

This matter comes before the Court pursuant to Defendant Community Phone Book, Inc.'s Motion to Dismiss and Compel Arbitration (the "Arbitration Motion")(Doc. ## 4, 5), filed on December 21, 2007.[1] On June 27, 2008, Plaintiff filed her response in opposition (entitled "Plaintiff's Motion to Dismiss Defendant's Motion to Dismiss and Compel Arbitration") (Doc. # 14). For the reasons that follow, Defendant's Arbitration Motion is due to be granted to the extent that the parties are compelled to arbitrate, and this case will be stayed pending arbitration.

**I.   Plaintiff's Complaint**

Plaintiff filed her pro se complaint against Defendant on August 21, 2007.  Plaintiff's complaint is not divided into separate counts, but contains allegations that Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§

---

[1] Documents number four and five are identical documents entitled: "Defendant Community Phone Book, Inc.'s Motion to Dismiss and Compel Arbitration." Both were filed on December 21, 2007.

2000(e) et seq. ("Title VII"), 42 U.S.C. § 1981 ("§ 1981") and the Florida Civil Rights Act, Fla. Stat. §§ 760.01 et seq. ("FCRA") "based in part on Plaintiff's race, African American, and in retaliation for her internal, protected complaints of discrimination based on race" (Doc. # 1 at ¶ 1). Plaintiff alleges that she served as an employee of Defendant as a sales representative. (Doc. # 1 at ¶ 2). Further, Plaintiff asserts that "Defendant, the Community Phone Book, Inc., [is] a corporate subsidiary or division of Volt Information Sciences, Inc." and that Defendant "published and sold advertising in a Jacksonville area publication known as The Community Phone Book and employed James, among others, as a sales representative whose job was to sell advertising space and listings to local area businesses." (Doc. # 1 at ¶ 3). Plaintiff alleges that, during Plaintiff's employment with Defendant, she was subjected to and internally complained about racially disparate working conditions to which similarly-situated white sales representatives were not subjected." (Doc. # 1 at ¶ 5).[2] Plaintiff asserts that Defendant's allegedly discriminatory actions were "motivated in part based upon

---

[2] Specifically, Plaintiff contends that she was denied reimbursement of cell phone expenses, was pulled from her sales territory and assigned to "black community" areas because of racially derogatory stereotyping, was denied her accounts, was improperly "written-up" for pretextual performance issues, was denied vacation pay, and was treated differently than other sales representatives regarding recycled accounts. (Doc. # 1 at ¶ 5(a)-(f)).

Plaintiff's race and/or in retaliation for her internal, protected complaints of racial discrimination." (Doc. # 1 at ¶ 6). Last, Plaintiff asserts that she has "suffered and continues to suffer economic, compensation-related damages from the above discriminatory treatment as well as emotional distress and mental anguish." (Doc. # 1 at ¶ 7).

II. **Defendant's Motion to Compel Arbitration and Dismiss or Stay**

On December 21, 2007, Defendant filed the pending Arbitration Motion (Doc. ## 4, 5). Defendant asserts that the allegations of Plaintiff's complaint are subject to arbitration and that the case should either be dismissed or stayed pending arbitration. Specifically, Defendant asserts that "During her employment . . . Plaintiff agreed that she would submit any employment-related disputes that may arise with CPB to arbitration in accordance with the Agreement to Arbitrate Disputes ('Arbitration Agreement') contained in the Sales Representative Employment Agreement ('Employment Agreement') signed by Plaintiff." (Doc. # 4 at 1-2).

Defendant attached to the Arbitration Motion (1) the affidavit of Lisa Valentino and (2) the Employment Agreement bearing what appears to be the signature of Sebrina Watkins dated March 9, 2000. The affidavit of Lisa Valentino indicates that Sebrina James (Plaintiff) and Sebrina Watkins are the same person. (Doc. # 4-2 at 1). Lisa Valentino avers that the Employment Agreement attached to the Arbitration Motion is "a true and complete copy of the

Employment Agreement (Standard Long Form) between DataNational, Inc., a subsidiary of Volt Information Sciences, Inc. and plaintiff Sebrina Watkins (also known as Sebrina James), dated March 9, 2000." (Doc. # 4-2 at 1).

This Court has reviewed the Employment Agreement, and it appears that Plaintiff signed the Employment Agreement. (Doc. # 4-2 at 1). The Employment Agreement contains the following language concerning arbitration (the "Arbitration Agreement"):

> Any dispute, controversy or claim arising out of, involving, affecting or related to this Agreement or breach of this Agreement, or arising out of, involving, affecting, or related in any way to Employee's employment or the termination of Employee's employment, including but not limited to disputes, controversies or claims arising out of or related to the actions of the Company's other employees, under Federal, State, and/or local laws, shall be resolved by binding arbitration pursuant to the Federal Arbitration Act. . . . This Agreement to Arbitrate Disputes does not prevent Employee from filing a charge or claim with any governmental administrative agency as permitted by applicable law.

(Doc. # 4-3 at 1).

Thus, Defendant submits that all of Plaintiff's claims are covered by the above Arbitration Agreement, and that this case should be dismissed or stayed pending arbitration.

Plaintiff, on the other hand, asserts: "Plaintiff did not sign an Employment Agreement to arbitrate disputes with Community Phone Book/CPB. Volt Information Sciences, Inc." (Doc. # 14 at 1). Plaintiff does not offer an explanation regarding the signed copy

of the Arbitration Agreement that is before this Court.[3] Plaintiff simply expresses her desire to proceed by jury trial rather than arbitration. This Court will address the issues as presented.

### III. Legal Standard

The Federal Arbitration Act (the "FAA") provides that a written arbitration "provision in any . . . contract evidencing a transaction involving commerce . . . is valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The effect of Section 2 of the FAA is to "create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). Section 3 of the FAA provides for the stay of proceedings in district court when an issue in the proceedings is referable to arbitration. Section 4 of the FAA provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement.

Thus, a district court must compel arbitration and stay the underlying action if the parties had an earlier agreement to arbitrate their dispute. 9 U.S.C. § 3. On this point, the FAA specifically states:

---

[3] Plaintiff does not address a majority of the points raised by Defendant's Arbitration Motion.

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

A plethora of Eleventh Circuit cases discuss arbitration agreements in the contest of employment disputes. The case of <u>Caley v. Gulfstream Aerospace Corp.</u>, 428 F.3d 1359 (11th Cir. 2005) is particularly pertinent. In <u>Caley</u>, the defendant corporation adopted an alternative dispute resolution policy which required its employees to submit their disputes for internal redress (rather than through the court system) with the ultimate resolution being binding arbitration. <u>Id.</u> at 1364. The alternative dispute resolution policy specifically included claims related to involuntary terminations, constructive discharges, employment discrimination, harassment based on age, race, sex, religion, national origin, veteran status, citizenship, disability, as well as claims for retaliation and torts. <u>Id.</u> at 1365. The employees were provided with a copy of the alternative dispute resolution policy through various means, however; the employees were not required to sign the policy. <u>Id.</u> 1369.

After the alternative dispute resolution policy was established and disseminated to the employees, several employees filed suit against the defendant employer.[4] The defendant employer sought to compel arbitration of the disputes based on the alternative dispute resolution policy, and the district court granted the motions to compel arbitration and dismissed the case. Id. at 1367. On appeal to the Eleventh Circuit, the plaintiff employees asserted that compulsory arbitration was inappropriate, among other things, because the plaintiffs never signed an agreement to arbitrate their disputes. Id. at 1367-1368. The Eleventh Circuit affirmed the district court's order compelling arbitration and dismissing the case. Id. at 1379.

In affirming the decision to require binding arbitration, the Eleventh Circuit provided the following helpful analysis:

> We readily conclude that no signature is needed to satisfy the FAA's written agreement requirement. First, the plain language of § 2 requires that the arbitration provision be "written." It does not, however, require that the agreement to arbitrate be signed either party; nor does any other provision of the FAA. As the Tenth Circuit has explained, "Decisions under the Federal Arbitration Act . . . have held it not necessary that there be a simple integrated writing or that a party sign the writing containing the arbitration clause. All that is required is that the arbitration provision be in writing." Medical Dev. Corp. v. Indus. Molding Corp., 479 F.2d 345, 348 (10th Cir. 1973). . . . Second, the overwhelming weight of authority supports the view that

---

[4]The plaintiffs in Caley sought relief under the Age Discrimination in Employment Act, the Fair Labor Standards Act, the Employee Retirement Income Security Act, and Title VII of the Civil Rights Act of 1964. 428 F.3d at 1364.

      no signature is required to meet the FAA's 'written' requirement.

Caley, 428 F.3d at 1369.

In addition to elucidating the requirement that arbitration agreements be in writing, the Eleventh Circuit also clarified in Caley that "compulsory arbitration agreements are now common in the workplace, and it is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes, including employment-discrimination statutes." Id. at 1367.

This Court has been supplied with a written arbitration agreement in this employment discrimination case. (Doc. # 4-3). While the agreement appears to bear Plaintiff's signature, Plaintiff appears to dispute that she signed the agreement. This Court need not resolve the factual issue of whether the signature on the Employment Agreement (which contains the Arbitration Agreement) was actually penned by Plaintiff. In the absence of other arguments concerning the validity of the Arbitration Agreement (such as unconscionability, lack of mutual assent, or waiver), this Court is inclined to grant Defendant's request to compel arbitration of Plaintiff's claims.

Nevertheless, in an abundance of caution and in all fairness to Plaintiff, this Court will provide some additional analysis regarding the issue of whether it can be said that Plaintiff agreed to arbitrate, as a court cannot require parties to arbitrate

-8-

disputes that they have not previously agreed to arbitrate. See Telecom Italia SPA v. Wholesale Telecom Corp., 248 F.3d 1109, 1114 (11th Cir. 2001)(internal citations omitted).

In the case of Chastain v. The Robinson-Humphrey Company, Inc., 957 F.2d 851 (11th Cir. 1992), the Eleventh Circuit provides the following analysis for the adjudication of cases lacking a signed agreement to arbitrate.  In Chastain, a securities firm moved to compel arbitration based on two customer service agreements, containing arbitration provisions, that were allegedly signed on behalf of, but not by, the customer herself.  The customer alleged that her signature was forged on the first customer service agreement and that her signature did not appear at all on the second customer service agreement.  The district court declined to compel arbitration, and the Eleventh Circuit affirmed.

The Eleventh Circuit instructed, "if the validity of the agreement to arbitrate is in issue, a district court, not a panel of arbitrators, must decide if the arbitration clause is enforceable against the parties. . . . 'The first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute'." Id. (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

The Chastain court continued its discussion with the oft-cited passage that follows:

> Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration. Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract *in general*. Because the making of the arbitration agreement *itself* is rarely in issue when the parties have signed a contract containing an arbitration provision, the district court usually must compel arbitration immediately after one of the contractual parties so requests. The calculus changes when it is undisputed that the party seeking to avoid the arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very existence of any agreement, *including the existence of an agreement to arbitrate*. Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the Act. If a party has not signed an agreement containing arbitration language, such party may not have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, *the district court itself* must first decide whether or not the non-signing party can nonetheless be bound by the contractual language. In cases of this type . . . [t]o make a genuine issue entitling the party seeking to avoid arbitration to a trial by jury on the arbitrability question, an unequivocal denial that the agreement had been made is needed, and some evidence should be produced to substantiate that denial.

Chastain, 957 F.2d at 854 (emphasis in original)(internal citations omitted).

Although the Court in Chastain declined to compel arbitration, the Court explained that the party challenging arbitration must deny that they agreed to arbitrate and should produce some evidence to buttress such denial. Id. Later, in the case of Wheat, First Sec., Inc. v. Green, 993 F.2d 814 (11th Cir. 1993), the Eleventh Circuit clarified "the party seeking to avoid arbitration must

-10-

unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial." Id. at 818 (internal citations omitted). Thus, the party challenging the arbitration provision, the Plaintiff in this case, must create a genuine issue of fact presenting "enough evidence to make the denial colorable." Chastain, 957 F.2d at 855.

In the present case, Plaintiff asserts only that she "did not sign an Employment Agreement to arbitrate disputes with Community Phone Book/CPB. Volt Information Science, Inc." (Doc. # 14 at 1). Assuming, arguendo, that Plaintiff did not sign the Arbitration Agreement, Plaintiff's claims are still subject to the Arbitration Agreement. In this case, the Plaintiff has failed to file an affidavit or proffer any evidence to substantiate the allegation that she did not sign the agreement which is before this Court (and appears to bear her signature). Plaintiff's only argument in response to the Arbitration Motion is that she did not sign the agreement. The law, however, is clear that her signature is not a requirement for her claims to be submitted to arbitration. Further, Plaintiff has not alleged that fraud, duress, or unconscionability render the Arbitration Agreement unenforceable.[5] In addition, the complaint allegations fall within the scope of the Arbitration

---

[5] "Generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

Agreement, and Defendant has not waived its right to arbitrate by taking an action inconsistent with its present request that the matter be submitted to arbitration.

**Conclusion**

This Court finds that the parties are bound by the terms of the Arbitration Agreement in this case.  Despite the apparent factual conflict, Plaintiff presents a bare denial that she signed the Employment Agreement which is insufficient to meet her burden as the party opposing arbitration, especially in light of the signed contract that is before this Court.  Accordingly, this Court finds that the parties reached an agreement to arbitrate.  The Court finds it appropriate to compel the parties to arbitration and to stay this action pending the completion of the arbitration consistent with the terms of 9 U.S.C. § 3.[6]

Accordingly, it is now

**ORDERED, ADJUDGED, and DECREED:**

1. Defendant Community Phone Book, Inc.'s Motion to Dismiss and Compel Arbitration (the "Arbitration Motion")(Doc. ## 4,5) is **GRANTED** to the extent that Plaintiff's claims shall be submitted to arbitration and the case shall be stayed pursuant to 9 U.S.C. § 3.

---

[6] The Court is not inclined to dismiss this case due to the arbitrability of Plaintiff's claims as requested by Defendant. Instead, this Court stays this action pending the resolution of the arbitration proceedings consistent with the terms of 9 U.S.C. § 3.

2.  Defendant's request that this case be dismissed is **DENIED**.

3.  The case is hereby **STAYED** pending notification by the parties that they have completed the arbitration process and the stay is due to be lifted or the case is due to be dismissed.

4.  The parties shall file a joint status report with this Court every ninety (90) days until this matter is resolved.

5.  The Clerk shall terminate all deadlines and motions, and stay the case.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 11th day of July, 2008.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Parties of Record